FILED: July 2, 2019

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 19-1614
(1:19-cv-01103-RDB)
_____

MAYOR AND CITY COUNCIL OF BALTIMORE

  Plaintiff – Appellee

v.

ALEX M. AZAR, II, in his official capacity as the Secretary of Health and Human Services; DIANE FOLEY, M.D., in her official capacity as the Deputy Assistant Secretary, Office of Population Affairs; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; OFFICE OF POPULATION AFFAIRS

  Defendants – Appellants

_____

O R D E R
_____

Upon consideration of submissions relative to appellants' motion to stay the district court's preliminary injunction pending appeal, the court grants the motion for stay.

Judge Richardson and Judge Rushing voted to grant the motion for stay. Judge Thacker voted to deny the motion for stay and filed a separate dissenting statement.

      For the Court

      /s/ Patricia S. Connor, Clerk

THACKER, J., dissenting:

I do not believe the Government has met its high burden for a stay in this matter.

First, the Government is not likely to prevail on the merits. The 2019 Final Rule at issue ("Final Rule") promulgated by Health and Human Services ("HHS") likely contravenes provisions of the Affordable Care Act ("ACA"), 42 U.S.C. § 18114, and Congress' nondirective mandate in the Continuing Appropriations Act for 2019, Pub. L. 115–245, 132 Stat. 2981, 3070–71 (2018) (the "Nondirective Mandate").

Title X grants and contracts must be made in accordance with HHS regulations, and no funds appropriated shall be used "in programs where abortion is a method of family planning." 42 U.S.C. §§ 300a–4, 300a–6. And as the district court stated, HHS has never allowed Title X recipients to use such funds to perform or subsidize abortions. In any event, that is not the issue here. We are dealing with a "gag rule" that prohibits Title X recipients from counseling clients about abortion and referring them for abortions -- not providing, performing, or paying for them.

The Final Rule likely violates the ACA and the Nondirective Mandate, both of which were enacted after *Rust v. Sullivan*, 500 U.S. 173 (1991), which was a decision bearing on the permissibility of HHS's regulations in a different legal landscape. Since *Rust*, Congress has explicitly recognized in the ACA the importance of removing barriers to full disclosure in a health care setting, and preserving a private and plenary consultation between a patient and her health care provider. Indeed, the ACA clearly provides that, notwithstanding other ACA provisions, HHS "shall not promulgate" any regulation that,

2

inter alia, "interferes with communications regarding a full range of treatment options between the patient and the provider"; "restricts the ability of health care providers to provide full disclosure of all relevant information to patients making health care decisions"; and "violates the principles of informed consent." 42 U.S.C. § 18114(3), (4), (5). I cannot fathom a more direct violation of this provision than a regulation prohibiting Title X health care providers from referring a woman for an abortion when she requests it. What is worse, the Final Rule actually requires health care providers to hide the ball from their patients by giving them a list of providers without telling them which ones actually perform abortions. How can this possibly be "full disclosure of all relevant information"? *Id.* § 18114(4). As the district court noted, the American Medical Association has even strongly opposed this rule for its interference in the patient-physician relationship. And President George H.W. Bush -- addressing concerns about the 1988 regulations the Government is attempting to revive here -- urged that under Title X, the "confidentiality of the doctor-patient relationship be preserved," and declared that operation of the Title X program must be "compatible with free speech and the highest standards of medical care." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 230 (D.C. Cir. 1992).

Further, the Final Rule also likely violates the Nondirective Mandate. Since 1996 -- again, after *Rust* -- Congress has mandated that under Title X, pregnancy counseling must be "nondirective." I find the district court's reasoning persuasive. That is, nondirective "counseling" encompasses referrals. HHS has even characterized referrals as part of *nondirective counseling* in the Final Rule itself. See 84 Fed. Reg. at 7733 ("Congress has

3

expressed its intent that postconception adoption information and referrals be included as part of any nondirective counseling in Title X projects when it passed [§ 254c-6(a)(1)]." (emphases supplied)). Thus, because the Final Rule requires pregnant women seeking abortions to be referred for prenatal care, and because Title X projects cannot adequately refer women to physicians who perform abortions *when the patient requests as much*, it likely violates the Nondirective Mandate.

I find disingenuous the Government's statement that "a doctor's *failure to refer* a patient for an abortion does not *direct* the patient to do anything." Mot. at 9. To start, it is not a "failure" to refer when you are directed not to do so. Moreover, Congress' use of "nondirective" means that patients are entitled to *neutral* counseling. In my view, refusing (not failing) to refer a patient to someone who actually performs abortions (when she has requested as much) is far from neutral.

Finally, this is not an implied repeal case, and I find the Government's arguments to the contrary misguided. Baltimore is not asking for a repeal of HHS's authority to promulgate regulations regarding Title X. Rather, it is asking us, via the Administrative Procedures Act, to address the executive's promulgation of a rule that is allegedly contrary to law. *See* 5 U.S.C. § 706.

For these reasons, I believe the Government is not likely to succeed on the merits.

Second, as to the remaining requirements for a stay -- irreparable harm, balance of the equities, and public interest -- the Government's filings lead me to believe that its alleged harm is grounded in its purported inconvenience and nuisance of not knowing when

4

and if the Final Rule will become effective. But this alleged harm pales in comparison to Baltimore's submission that its longstanding and renowned health care system is in jeopardy. Baltimore City health clinics served 7,670 Title X clients in 2017, of which nearly one in five were under the age of 18, and almost 84% were female, and it has seen a reduction in teen pregnancy by 55% in the last ten years. The Government's declaration that "the Rule simply limits what the government chooses to fund through the Title X grant program" ignores reality. Mot. at 14. The public has a strong interest in maintaining a check on executive agency overreach. Just ask the Founding Fathers.

Therefore, having concluded the Government has failed to meet its burden, I vote to deny the motion for stay.