IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *        Civil Action No.: RDB-19-1103 |
| | * |
| ALEX M. AZAR II, Secretary of Health and Human Services, *et al.*, | * |
| | * |
| Defendants. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM ORDER

This case involves the challenge by the Mayor and City Council of Baltimore ("Baltimore City" or "the City") to a rule promulgated by the United States Department of Health and Human Services that would amend federal regulations with respect to the funding of family planning services. It is one of multiple cases across the nation that initially sought to enjoin the Government from putting into effect certain provisions of the Health and Human Services Final Rule that was scheduled to go into effect on May 3, 2019. Specifically, Baltimore City brings a ten-Count Complaint pursuant to the Administrative Procedures Act ("APA") against Alex M. Azar II, in his official capacity as the Secretary of Health and Human Services; United States Department of Health and Human Services ("HHS"); Diane Foley, M.D., in her official capacity as the Deputy Assistant Secretary, Office of Population Affairs; and Office of Population Affairs (collectively, "Defendants" or "the Government"). (Compl., ECF No. 1.) Baltimore City challenges the final rule ("Final Rule") entitled *Compliance with*

*Statutory Program Integrity Requirements*, 84 Fed. Reg. 7,714 (Mar. 4, 2019), *to be codified at* 42 C.F.R. Part 59. The Final Rule amends the regulations developed to administer Title X of the Public Health Service Act, 42 U.S.C. §§ 300 to 300a-6, which provides federal funding for family-planning services. (*Id.* at ¶¶ 1, 3.)

Currently pending before this Court is Defendants' Motion to Dismiss (ECF No. 67). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion shall be GRANTED IN PART and DENIED IN PART. Specifically, Count IV – Violation of APA § 706—Contrary to Law—Contrary to Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1(a) shall be DISMISSED WITHOUT PREJUDICE, and Count X – Violation of APA—Contrary to Constitutional Right—Unconstitutionally Vague shall be DISMISSED WITHOUT PREJUDICE. As to Count IV, the City has made only conclusory statements with no support to indicate how any religious belief is being substantially burdened by the Final Rule. As to Count X, the Complaint does not provide sufficient allegations that this regulation is unconstitutionally vague. The remaining Counts I, II, III, V, VI, VII, VIII, and IX shall proceed on the merits.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The background of this case was discussed at length in this Court's prior Memorandum Opinion of May 30, 2019, in which this Court granted

Plaintiff's Motion for Preliminary Injunction.[1]  (*See* Mem. Op., ECF No. 43.)  In brief, Congress enacted Title X almost fifty years ago, in 1970, to address low-income individuals' lack of equal access to family planning services.  (Compl. ¶ 2, ECF No. 1.)  The federal grant program has been providing $1,430,000 each year to the City of Baltimore and serves over 16,000 patients per year at 23 sites in the City.  (*Id.* at ¶ 1.)  Earlier this year, on March 4, 2019, HHS published the Final Rule in the Federal Register amending the regulations developed to administer Title X.  (*Id.* at ¶ 3.)  The City alleges that the Final Rule's effects will irreparably harm the City and its residents.  (*Id.* at ¶ 4.)

Two aspects of the Final Rule are the most important: (1) the "Gag Rule" that prohibits health professionals from providing their patients with abortion referral information even if patients directly request it, violating the basic tenets of medical ethics and undermining patients' trust in the patient-provider relationship; and (2) the Separation Requirement, which requires that all abortion services, and any medical services not complying with the Gag Rule, be physically separated from clinics that provide Title X services.  (*Id.* at ¶¶ 5-13.)  The deadline for physical separation is March 4, 2020.

Baltimore City filed this lawsuit on April 12, 2019 asserting ten causes of action:

- I – Violation of Administrative Procedures Act ("APA"), 5 U.S.C. § 706—Contrary to Law—Contrary to Affordable Care Act ("ACA")'s Non-Interference Provision, 42 U.S.C. § 18114.

- II – Violation of APA § 706—Contrary to Law—Contrary to Nondirective Mandate of the Consolidated Appropriations Act of 2018

- III – Violation of APA § 706—Contrary to Law—Contrary to Tile X, 42 U.S.C. §§ 300(a), 300a(a)

---

[1]    Discussed *infra* on page 4.

- IV – Violation of APA § 706—Contrary to Law—Contrary to Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1(a).

- V – Violation of APA § 706—Contrary to Constitutional Right—First Amendment

- VI – Violation of APA—Contrary to Constitutional Right—Equal Protection Under Fifth Amendment

- VII – Violation of APA—Arbitrary and Capricious—Inadequately Justified

- VIII – Violation of APA—Arbitrary and Capricious—Objectively Unreasonable

- IX – Violation of APA—Without Observance of Procedure Required by Law

- X – Violation of APA—Contrary to Constitutional Right—Unconstitutionally Vague

Baltimore City also filed a Motion for Preliminary Injunction (ECF No. 11), which this Court granted on May 30, 2019, enjoining enforcement of the Final Rule in the State of Maryland. (*See* Mem. Op., ECF No. 43.) Thereafter, the Government filed its Notice of Interlocutory Appeal (ECF No. 48; USCA No. 19-1614) and a Motion to Stay the Injunction Pending Appeal (ECF No. 49). This Court denied the Government's stay motion, but a divided panel of the United States Court of Appeals for the Fourth Circuit granted the Government's Motion to Stay the Injunction Pending Appeal. (*See* ECF Nos. 56, 58.) Therefore, at this time, the preliminary injunction that this Court granted is stayed, and the Title X Final Rule is in effect.[2] Baltimore City filed an Emergency Motion for Rehearing *en*

---

[2]     This Court notes that a panel for the Ninth Circuit Court of Appeals granted a stay of the preliminary injunctions that were granted in the California, Oregon, and Washington State cases. *California v. Azar*, 927 F.3d 1068 (9th Cir. 2019) (*per curiam*). An *en banc* rehearing of the stay decision was granted and remains pending. *See* 927 F.3d 1045 (9th Cir. July 3, 2019). In the Maine case, the District Court denied the plaintiff's motion for a nation-wide injunction, which it had previously withdrawn and renewed after the stay of the nation-wide injunctions was granted. *Family Planning Ass'n of Maine v. HHS*, No. 19-100, 2019 WL 2866832 (D. Me. July 3, 2019).

*banc* to vacate the stay of injunction, and that motion was denied on September 3, 2019. (*See* ECF No. 73.) Oral argument on the interlocutory appeal of the preliminary injunction is scheduled for September 18, 2019.

The Government also filed a Motion to Stay Proceedings Pending Appeal (ECF No. 62) and the pending Motion to Dismiss (ECF No. 67). This Court denied the Government's motion to stay proceedings and set an expedited schedule for briefing the dismissal motion. (ECF No. 70.) The dismissal motion is now ripe for decision, and for the reasons that follow, Defendants' Motion shall be GRANTED IN PART and DENIED IN PART. Specifically, Count IV – Violation of APA § 706—Contrary to Law—Contrary to Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1(a) shall be DISMISSED WITHOUT PREJUDICE, and Count X – Violation of APA—Contrary to Constitutional Right—Unconstitutionally Vague shall be DISMISSED WITHOUT PREJUDICE. As to Count IV, the City has made only conclusory statements with no support to indicate how any religious belief is being substantially burdened by the Final Rule. As to Count X, the Complaint does not provide sufficient allegations that this regulation is unconstitutionally vague. The remaining Counts I, II, III, V, VI, VII, VIII, and IX shall proceed on the merits.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

The Administrative Procedures Act requires a reviewing court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The United States Court of Appeals for the Fourth Circuit stated that "we must engage in a searching and careful inquiry of the [administrative] record, so that we may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Casa De Maryland v. U.S.*

*Dep't of Homeland Security*, 924 F.3d 684, 703 (4th Cir. 2019) (quoting *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012)).

## ANALYSIS

The Government asserts two main arguments: (1) Baltimore City lacks third-party standing to assert claims under the Religious Freedom Restoration Act ("RFRA"), Count IV, and the Fifth Amendment's equal protection clause, Count VI; and (2) each of the City's ten claims lacks merit and fails as a matter of law. This Court shall address each in turn.

## I.     Standing as to Counts IV and VI

In addition to satisfying constitutional standing requirements, not at issue in this case, a plaintiff in this type of action must also demonstrate that its claims are not barred by prudential factors that counsel against hearing a case. *United States v. Windsor*, 570 U.S. 744, 760 (2013); *see also, e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-27 (2014); *Doe v. Sebelius*, 676 F. Supp. 2d 423, 428 (D. Md. 2009). One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

As this question of prudential standing is non-jurisdictional, *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012), Rule 12(b)(6) provides the appropriate standard of review. *See Bluefeld v. Cohen*, No. PX-15-2857, 2017 WL 1546406, at *4 n.2 (D. Md. Apr. 27, 2017), *aff'd*, 697 F. App'x 788 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1701 (2018) (citing *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013)) (noting that constitutional standing, which

goes to subject-matter jurisdiction, generally falls under Rule 12(b)(1) while prudential standing is properly addressed under Rule 12(b)(6) ).

The Government contends that Baltimore lacks "third party standing" to bring RFRA and Fifth Amendment claims. (Mot. Mem. 36, ECF No. 67-1.) Specifically, the Government argues that Baltimore City lacks standing to bring its claims under the RFRA and the Fifth Amendment's equal protection clause "because it has not alleged that it, as a city, will suffer the harm alleged in those claims." (*Id.*) In other words, Baltimore City cannot argue that it has a religious belief or that it is being discriminated against on the basis of sex. (*Id.*) The United States Court of Appeals for the Fourth Circuit has held that in order to enforce a third party's rights, "a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991)).

The City alleges:

> The Final Rule violates rights of religious conscience recognized by RFRA by prohibiting physicians and other health care providers from counseling patients about comprehensive reproductive health services, and making complete and appropriate referrals, even when their religious beliefs require them to fully inform their patients about *all* their medical options and to make appropriate referrals. This includes physicians and other health care providers whose religious beliefs require them to inform patients of their religious views against abortion as well as physicians and other health care providers whose religious beliefs require them to inform patients of information necessary for patients to make informed decisions about their health care in light of the importance certain faiths place on individual self-determination.

(Compl. ¶ 169, ECF No. 1.)  With respect to equal protection, the City alleges discrimination against, and injury on behalf of, all women, and in particular, pregnant women.  (*Id.* ¶¶ 196-198.)  The Government notes that Baltimore City does not identify any specific individuals but "apparently seeks to raise these claims on behalf of (unidentified) third parties," which the Government states "is generally forbidden." (Mot. Mem. 37, ECF No. 67-1 (quoting *Bailey v. Atl. Auto. Grp.*, 992 F. Supp. 2d 560, 566 (D. Md. 2014)).)

Baltimore City argues that the Administrative Procedures Act ("APA") grants parties with Article III standing the right to sue to "'set aside agency action' 'not in accordance with law' or 'contrary to constitutional right.'"  (Pl.'s Resp. 2, ECF No. 71 (quoting 5 U.S.C. § 706).)  The City cites two United States Supreme Court cases as authority for its contention that "Congress granted an express right of action to persons who otherwise might be barred by so-called 'prudential' standing rules." (*Id.* (citing *Warth*, 422 U.S. at 501 and *Lexmark*, 572 U.S. at 125-28 & n.3).)  Baltimore City also argues that as the health care provider for thousands of its citizens, it has third-party standing to assert its patients' interests.  (*Id.* at 3 (citing *Singleton v. Wulff*, 428 U.S. 106, 114-16 (1976)).)  In its Complaint, the City alleges:

> It is well established that the City of Baltimore has standing to assert not only its right to redress of injury to its coffers, but also to prevent and seek redress for injury to the public health which it is empowered to protect. In addition, the City has standing to assert the rights of its physicians and other medical providers, and its patients because there is a close relationship between the City and its medical providers and patients, and physicians and patients face genuine obstacles to asserting their own rights, including because of privacy concerns.
>
> In addition, Baltimore City Health Department employs physicians and those physicians have standing to assert the rights of their patients in this case because of the close relationship

> between, and aligned interests of, physicians and their patients
> seeking reproductive health services.

(Compl. ¶¶ 40-41, ECF No. 1.)

First, under Count IV, Baltimore City alleges a violation of the APA § 706 based on the Final Rule being contrary to the law, specifically the Religious Freedom Restoration Act of 1993, which provides that the "Government shall not substantially burden a person's exercise of religion." (Compl. ¶¶ 168-73 (quoting 42 U.S.C. § 2000bb-a(a)).) The Government does not dispute that Baltimore City has standing to assert a claim that the Final Rule is contrary to law with respect to (1) the Affordable Care Act; (2) the Nondirective Mandate of the Consolidated Appropriations Act; or (3) Title X. However, in Count IV, Baltimore City has also asserted that the Final Rule is contrary to law with respect to the Religious Freedom Restoration Act. Although Baltimore City is not itself able to claim that its exercise of religion is burdened, the allegation that its facilities' physicians and other medical providers may be burdened by such a violation is sufficient to allege standing because Baltimore City itself will be adversely affected by this burden placed on its staff, for example, by having to decline to accept Title X funds in order to retain its medical providers, or to reduce their services. (*See, e.g.*, Compl. ¶¶ 4, 22-26, 37-38, ECF No. 1.)

Second, under Count VI, Baltimore City alleges a violation of the APA § 706 based on the Final Rule being contrary to a constitutional right, specifically the equal protection clause of the Fifth Amendment by discriminating against pregnant women. (*Id.* at ¶¶ 195-202.) Baltimore City cannot itself claim that it is being discriminated against on the basis of sex, but it does allege injury to the public health, which it is empowered to protect, and its facilities'

patients face genuine obstacles to asserting their own rights, including because of privacy concerns.  (*See, e.g.*, *id.* at ¶¶ 40-41.)

There are long-standing and sound reasons for the general rule that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Singleton*, 428 U.S. at 114 (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)).  However, as with any general rule, there are exceptions, and notably, it "should not be applied where its underlying justifications are absent."  *Id.*  In this case, rights are not being adjudicated unnecessarily, nor are the third parties in a better position to enforce the rights at issue.  *See id.* at 113-14 (describing the two considerations underlying the general rule).  This is especially true in the case of poor, young teenage girls who seek confidential care and assistance from the City's school-based health centers.  (*See, e.g.*, Compl. ¶¶ 36, 63, ECF No. 1.)  In *Singleton*, the Supreme Court determined that there are several obstacles to a woman's assertion of her own rights, such as the "desire to protect the very privacy of her decision from the publicity of a court suit" and held: "[W]e conclude that it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision . . . ." 428 U.S. at 118.  Although the relationship alleged is not as close as the direct doctor-patient relationship in *Singleton*, neither is it an "amorphous, theoretical relationship" as the Government suggests.  (*See* Mot. Mem. 37, ECF No. 67-1 (quoting *Lewis v. Richmond City Sheriff's Office*, 2014 WL 2203949, at *3 (E.D. Va. May 27, 2014)).)

This Court is not being called upon to rule on an abstract question.  Baltimore City has alleged that its facilities employ doctors with close relationships to their patients, its facilities' patients are being discriminated against on the basis of sex, and those patients are not in the

best position to protect their own interests. They further allege injury to the City as a result, namely public health impacts, such as increases in teen pregnancy rates and sexually transmitted diseases. Finally, this Court notes that the Government has not asserted that Baltimore City's interests fall outside the "zone of interests" protected by the invoked laws. In *Lexmark*, the Supreme Court clarified that the zone-of-interests test is not a "standing" test, and "in the APA context, [it] is not especially demanding." 572 U.S. at 128-30.

Accordingly, the City's standing allegations are sufficient to survive this dismissal motion.

## II.    Rule 12(b)(6) Motion as to All Counts of the Complaint

With respect to the Rule 12(b)(6) motion to dismiss as to all counts of the Complaint, this Court reviews only whether the Complaint alleges "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Government argues that the Supreme Court's decision in *Rust v. Sullivan* upheld materially indistinguishable regulations, it has not been overruled, so all claims fail as a matter of law. (Mot. Mem. 14, ECF No. 67-1 (citing *Rust v. Sullivan*, 500 U.S. 173 (1991); Reply 1, ECF No. 72.).) Therefore, this Court shall first address that argument and then discuss whether the causes of action have been adequately pled.

### A.    *Rust v. Sullivan* Does Not Mandate Dismissal of This Case

The 1988 regulations, which this Court accepts were materially the same as the Final Rule, were upheld by the Supreme Court in *Rust v. Sullivan*. 500 U.S. at 203. Specifically, the Supreme Court held that the legislative history was ambiguous with respect to Congress' intent

in enacting Title X and the prohibition of Section 1008. *Id.* at 185, 189. Applying *Chevron*[3] deference to the agency's interpretation, *id.* at 186-87, the Supreme Court therefore held that the 1988 regulations were a permissible construction of Title X and did not violate either the First or Fifth Amendments to the Constitution. *Id.* at 191-203. However, as this Court stated in its prior decision granting a preliminary injunction, simply because the Supreme Court in *Rust v. Sullivan* found that the then-Secretary had amply justified the change in interpretation with a reasoned analysis, does not mean that the current Secretary has also done so. The ensuing changes in the societal landscape and in the law over the past 30 years means that HHS cannot rely on the same justifications as it did in 1988. (Mem. Op. 22, ECF No. 43.)

Further, in this case, Baltimore City has alleged ten causes of action based partly on violations of laws enacted after *Rust v. Sullivan* was decided, such as the Affordable Care Act and the Continuing Appropriations Act Nondirective Mandate. The City makes different arguments than were discussed in *Rust v. Sullivan*, and it makes those arguments in a different context. Contrary to the Government's argument, as this Court earlier stated, there is no "silent repeal" by Congress at issue here. (Mem. Op. 19, ECF No. 43; *see also Mayor and City Council of Baltimore v. Azar*, — F. App'x —, 2019 WL 3072302, at *2 (4th Cir. 2019) (Thacker, J., dissenting); *California v. Azar*, 927 F.3d 1068, 1076 (9th Cir. 2019), *reh'g en banc granted* 927 F.3d 1045 (9th Cir. 2019).) Importantly, in the dismissal context, this Court is not analyzing the merits of Baltimore City's claims and finds no reason to foreclose the City's arguments at this stage of proceedings.

---

[3]    In *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, the United States Supreme Court held that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." 467 U.S. 837, 843 (1984).

### B. Plausible Claims

The Government argues that there is no merit to Baltimore City's claims. (*See, e.g.*, Mot. Mem. 2, 14, 34, 37, 40, 42, 44, ECF No. 67-1.) This Court reiterates that it is not analyzing the City's claims on the merits given this case's present posture. The Administrative Record is not before this Court, although it has been provided to Baltimore City. (*See* ECF No. 57.) Therefore, this Court considers only whether Baltimore City has pled plausible causes of action, accepting factual allegations as true and granting the City the benefit of all inferences, such that this case can move forward on the merits.

### 1. Counts I – IV – Contrary to Law Claims

Baltimore City has alleged that the Final Rule is contrary to law for four reasons, which comprise four causes of action: (1) contrary to the Affordable Care Act; (2) contrary to the Nondirective Mandate of the Consolidated Appropriations Act; (3) contrary to Title X; and (4) contrary to the Religious Freedom Restoration Act.

With regard to Counts I, II, and III, the allegations sufficiently put the Government on notice as to the nature of the claims. Indeed, the Government does not argue that Baltimore City's allegations are inadequate. For example, the City alleges that the Gag Rule violates at least three parts of section 1554 of the Affordable Care Act, 42 U.S.C. § 18114. (Compl. ¶¶ 147-150, ECF No. 1.) It further alleges that the Separation Requirement creates "unreasonable barriers to the ability of individuals to obtain appropriate medical care." (*Id.* at ¶ 153.) The City also alleges that the "Final Rule violates the Nondirective Mandate by eliminating the Current Regulations' nondirective pregnancy counseling requirement, permitting providers to offer only biased, one-sided information" and "*requires directive counseling*

*toward* prenatal care and away from abortion, in violation of law." (*Id.* at ¶¶ 159-160.) Also, the City alleges that the Final Rule exceeds Defendants' authority under the Title X statute by directing that "fund recipients may not offer a comprehensive program of family planning services, directly contrary to law" and is inconsistent with Title X's purpose. (*Id.* at ¶ 165.) Regardless whether these claims will prevail on the merits, the City has alleged the elements necessary to state the claims.

With regard to Count IV, the Government asserts that the RFRA claim is inadequately pled. To establish a *prima facie* RFRA claim, a plaintiff must allege (1) an exercise of religion, (2) that is grounded in a sincerely held religious belief, and (3) that is substantially burdened by the challenged government action. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99 (4th Cir. 2013). The City alleges that the Final Rule "violates rights of religious conscience recognized by RFRA by prohibiting physicians and other health care providers from counseling patients about comprehensive reproductive health services, and making complete and appropriate referrals, even when their religious beliefs require them to fully inform their patients about all their medical options and to make appropriate referrals." (Compl. ¶ 169, ECF No.1.) The City also alleges that the Final Rule "provides no exception whatsoever to the Gag Rule for physicians and other medical providers and professionals whose religious exercise would be substantially burdened by the inability to mention abortion or to honestly counsel patients and provide options, support, and counseling for their patients' best interests." (*Id.* at ¶ 170.)

Baltimore City has done little more than allege conclusory statements with no support to demonstrate any religious belief or how it has been substantially burdened. These

allegations are insufficient to state a plausible claim that the Final Rule violates the RFRA. In its response, Baltimore City identifies various tenets of faith that are being violated, but these assertions are not alleged in the Complaint. Therefore, Count IV, asserting a RFRA claim, shall be dismissed for failure to state a claim.

### 2. Counts V – VI – Constitutional Claims

Baltimore City alleges that the Final Rule violates the First Amendment in various ways, including: by interfering with its strategy to maximize patient trust by being pain-stakingly nondirective; by compelling it to infringe the free speech rights of its employees and subgrantees; by dictating the medical advice and referrals that its providers may deliver; by restricting rights to engage in speech by the express ban on referrals even when asked; compelling speech by requiring the espousal of only one viewpoint; and by imposing requirements that are so restrictive that they effectively prevent the use of non-Title X money to pursue activities protected by the First Amendment. (*Id.* at ¶¶ 181-189.)

The Government argues only that the First Amendment claim lacks merit and is foreclosed by the Supreme Court's decision in *Rust v. Sullivan*. Baltimore City argues that it makes different arguments than were analyzed in *Rust v. Sullivan*, including that the Final Rule violates private speech. The City's legal theory can survive a dismissal motion and shall not be dismissed. This also holds for the Fifth Amendment claim. Baltimore City's legal theory of sex discrimination under its Fifth Amendment claim differs from that analyzed by the Supreme Court in *Rust v. Sullivan*, and it plausibly alleges unconstitutional sex discrimination sufficient to survive this motion to dismiss.

### 3. Counts VII – VIII – Arbitrary and Capricious Claims

A plaintiff can state a claim that an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in a number of ways. Those include alleging that the agency failed to articulate an adequate explanation for its new policy, and that it failed to consider factors made relevant by Congress.

*James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000) (citing *AT & T v. FCC*, 974 F.2d 1351, 1355 (D.C. Cir. 1992) and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Baltimore City has sufficiently alleged both a failure to articulate an explanation of the new policy and a failure to consider factors made relevant by Congress.[4] For example, Baltimore City alleges that "the Final Rule provides no reasoned explanation for its drastic changes to the Title X program, while it simultaneously disregards or otherwise fails to meaningfully consider and address material facts and evidence submitted during the comment period on the Proposed Rule." (Compl. ¶ 206, ECF No. 1.) It also alleges that the Final Rule

> reverses the Department's longstanding policies and interpretations of Title X with no evidentiary basis or cogent rationale, requires deviation from evidence-backed standards of care and medical ethical and fiduciary obligations, needlessly jeopardizes patients' lives, health, and well-being, disregards and/or is contrary to evidence before the agency, ignores many important aspects of the problem and the significant new problems it will create, relies on factors Congress did not intend the agency to consider, and is illogical and counterproductive. HHS also adds a new, unsupported and illogical rationale for the Final Rule's mandatory prenatal care referral requirement without

---

[4] Notably, in its earlier decision, this Court did not reach a conclusion regarding the merits of Baltimore City's arbitrary and capricious claims and did not grant injunctive relief on that basis. (Mem. Op. 23, ECF No. 43.) Rather, having found that the Final Rule likely violates provisions of the Affordable Care Act and the Continuing Appropriations Act, the threshold inquiry on the merits had already been established for injunctive relief. (*Id.*)

having given the public notice or an opportunity to comment on
this new rationale.

(*Id.* at ¶ 219.)   An agency rulemaking is arbitrary and capricious, if, in coming to its decision,

the agency "relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to

a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.

v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).   Accepting the City's allegations as true,

it has alleged the elements necessary to state a claim.   Of course, as this Court noted in its

earlier decision, to engage in a review on the merits requires a "searching and careful inquiry

of the [administrative] record," but that is not the current posture of this case.   (Mem. Op. 21,

ECF No. 43 (quoting *Casa De Maryland*, 924 F.3d at 703).)

Accordingly, Counts VII and VIII shall not be dismissed.

### 4.   Count IX – Without Observance of Procedure Required by Law

Baltimore City alleges that "The regulatory impact analysis in the Proposed Rule did

not sufficiently identify and quantify the costs and benefits of the rulemaking, evading the

APA's critical procedural protections that ensure agency regulations are tested through

exposure to public comment, and denying affected parties an opportunity to present comment

and evidence to support their positions, in violation of 5 U.S.C. § 706(2)(D)."   (Compl. ¶ 228,

ECF No. 1.)  The City also alleges that the Proposed Rule did not disclose certain restrictions,

which was not a logical outgrowth of the Proposed Rule, and this deprived affected parties an

opportunity to present comment and evidence opposing it.   (*Id.* at ¶ 229.)   Baltimore City

added that the Final Rule was adopted "without following the process required for notice-and-comment rulemaking concerning its new speaker-based ban on 'nondirective pregnancy' counseling." (*Id.* at ¶ 230.)

Baltimore City has made a plausible claim that the public was deprived of a meaningful opportunity to comment on the Proposed Rule and departed from proper rulemaking procedures. The Government argues only that the claim lacks merit. Accordingly, Count IX shall survive this dismissal motion.

### 5.    Count X – Unconstitutionally Vague

Finally, Baltimore City alleges that the Final Rule violates the Fifth Amendment Due Process Clause because it is unconstitutionally vague. The Government contends that Baltimore City fails to state a claim for a facial vagueness challenge to the Final Rule. (Mot. Mem. 44, ECF No. 67-1.)

A regulation is unconstitutionally vague in violation of the Due Process Clause "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). However, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.* at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). To prevail in a facial challenge, a plaintiff must show that "no set of circumstances exists under which the Act would be valid," i.e., that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). Certainly, it appears that a facial

challenge cannot succeed if a "statute has a 'plainly legitimate sweep.'" *Id.*; *see also United States v. Comstock*, 627 F.3d 513, 518 (4th Cir. 2010). A statute that has a "plainly legitimate sweep" has also been described as having "more than a conceivable application." *Martin v. Lloyd*, 700 F.3d 132, 136-37 (4th Cir. 2012). Further, "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *NEA v. Finley*, 524 U.S. 569, 589 (1998).

In its Complaint, Baltimore City alleges only generally that the standards for the Final Rule's requirements are "vague, subjective, and otherwise uncertain, and therefore give the entities regulated by them insufficient guidance and invite inconsistent or biased enforcement by HHS." (Compl. ¶ 234, ECF No. 1.) The Complaint does not refer to any terms within the statute that are impermissibly vague, and although it points to specific sections of the Rule, it provides no allegations about what is vague in those sections. Accordingly, Baltimore City fails to allege a plausible claim that the Final Rule is unconstitutionally vague, and Count X shall be dismissed.

## CONCLUSION

For the reasons stated above, IT IS this 12th day of September 2019, HEREBY ORDERED:

1. Defendants' Motion to Dismiss (ECF No. 67) is GRANTED IN PART and DENIED IN PART;

   a. Count IV – Violation of APA § 706—Contrary to Law— Contrary to Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1(a) is DISMISSED WITHOUT PREJUDICE.

b.    Count X – Violation of APA—Contrary to Constitutional Right—Unconstitutionally Vague is DISMISSED WITHOUT PREJUDICE.

c.    Counts I, II, III, V, VI, VII, VIII, and IX shall proceed on the merits.

2.    That the Clerk of the Court transmit copies of this Memorandum Order to counsel for both parties.

_____/s/_____
Richard D. Bennett
United States District Judge